UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NYJEW HAGGRAY,

    Plaintiff,

v.

COUNTY OF ALBANY, CRAIG APPLE, Albany County Sheriff, THOMAS WIGGER, former Superintendent, MICHAEL POOLE, Sergeant, DAMIEN ANZALONE, Corrections Officer, ORLANDO COSENTINO, Corrections Officer, WILLIAM REDDY, JOHN DOES 1-4, Corrections Officers, CORRECTIONAL MEDICAL CARE, INC., EMRE UMAR, DR. S. AZAZ HAIDER-SHAH, Facility Physician, DARRA HOTOPP, Registered Nurse, JOHN/JANE DOES 5-8, nurses,

    Defendants.

Index No.:  9:16-cv-32 (MAD/DEP)

**JURY TRIAL DEMANDED**

---

The Plaintiff, Nyjew Haggray, by and through his attorney, Jessica M. Gorman, complains and alleges of the Defendants as follows:

## INTRODUCTION

1. This action seeks redress for the deprivation by Defendants, acting under color of law, of rights guaranteed to the Plaintiff under the United States Constitution and federal law. The Defendants deprived Plaintiff of these rights by assaulting him and failing to provide adequate medical care for his serious injuries.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 because it is brought to seek relief and/or damages for the deprivation, under color of state law, of the rights guaranteed by the Constitution of the United States and federal law.

1

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims herein occurred in this judicial district.

## PARTIES

4. Plaintiff NYJEW HAGGRAY is a citizen of the United States and currently resides in Albany County, New York.

5. Defendant COUNTY OF ALBANY is a municipal corporation duly incorporated under the laws of the State of New York, and was at all times relevant herein the employer and/or principal of the Defendants.

6. At all times relevant herein, Defendant CRAIG APPLE was and remains employed as the Albany County Sheriff, with his principal place of business being the Albany County Sheriff's Office, 6 Lodge Street, Albany, New York 12207.  Claims against Defendant Apple are asserted in his individual capacity.

7. At all times relevant herein, Defendant THOMAS WIGGER was Superintendent of the Albany County Correctional Facility, with his principal place of business at 840 Albany-Shaker Road, Albany, New York 12211. Claims against Defendant Wigger are asserted in his individual capacity.

8. Upon information and belief, and at all times relevant herein, Defendant MICHAEL POOLE, was and remains employed as a sergeant at the Albany County Correctional Facility, with his principal place of business at 840 Albany-Shaker Road, Albany, New York 12211. Claims against Defendant Poole are asserted in his individual capacity.

9. Upon information and belief, and at all times relevant herein, Defendant DAMIEN ANZALONE was and remains employed as a corrections officer at the Albany County Correctional Facility, with his principal place of business at 840 Albany-Shaker Road,

Albany, New York 12211. Claims against Defendant Anzalone are asserted in his individual capacity.

10. Upon information and belief, and at all times relevant herein, Defendant ORLANDO COSENTINO was and remains employed as a corrections officer at the Albany County Correctional Facility, with his principal place of business at 840 Albany-Shaker Road, Albany, New York 12211. Claims against Defendant Cosentino are asserted in his individual capacity.

11. Upon information and belief, and at all times relevant herein, Defendant WILLIAM REDDY was and remains employed as a corrections officer at the Albany County Correctional Facility, with his principal place of business at 840 Albany-Shaker Road, Albany, New York 12211. Claims against Defendant Reddy are asserted in his individual capacity.

12. Upon information and belief, and at all times relevant herein, Defendants JOHN DOES 1-4 were and remain employed as corrections officers at the Albany County Correctional Facility, with their principal place of business at 840 Albany-Shaker Road, Albany, New York 12211.  The precise identities of these Defendants are not yet known. Claims against these Defendants are asserted in their individual capacities.

13. At all times relevant herein, Defendant CORRECTIONAL MEDICAL CARE, INC. was and remains the official provider of medical services for the Albany County Correctional Facility pursuant to a contract with the County of Albany, with its corporate offices at 920 Harvest Drive, Suite 120, Blue Bell, Pennsylvania 19422.

14. At all times relevant herein, Defendant EMRE UMAR was and remains the President of Correctional Medical Care, Inc., with his principal place of business at 920 Harvest

Drive, Suite 120, Blue Bell, Pennsylvania 19422. Claims against Defendant Umar are asserted in his individual capacity.

15. Upon information and belief, and at all times relevant herein, Defendant Dr. S. AZAZ HAIDER-SHAH was employed by Correctional Medical Care, Inc. as the facility physician at the Albany County Correctional Facility, with his principal place of business at 840 Albany-Shaker Road, Albany, New York 12211.  Claims against Defendant Dr. Haider-Shah are asserted in his individual capacity.

16. Upon information and belief, and at all times relevant herein, Defendant DARRA HOTOPP was and remains employed by Correctional Medical Care, Inc. as a registered nurse at the Albany County Correctional Facility, with her principal place of business at 840 Albany-Shaker Road, Albany, New York 12211. Claims against Defendant Hotopp are asserted in her individual capacity.

17. Upon information and belief, and at all times relevant herein, Defendants JOHN/JANE DOES 5-8 were and remain employed by Correctional Medical Care, Inc. as medical staff at the Albany County Correctional Facility with their principal place of business at 840 Albany-Shaker Road, Albany, New York 12211.  The precise identities of these Defendants are not yet known. Claims against these Defendants are asserted in their individual capacities.

## **FACTS**

18. On February 1, 2013, while incarcerated at the Albany County Correctional Facility (ACCF) in Albany, New York, the Plaintiff Nyjew Haggray was assaulted and seriously injured by several Defendant corrections officers (COs).

19. The day before the assault, Mr. Haggray was "locked in." When an inmate is locked in, he is confined to his cell and allowed out only for certain limited purposes. When used punitively, lock in is one alternative to solitary confinement. Punitive lock in is not to be imposed arbitrarily, but rather pursuant to a disciplinary charge and pending a disciplinary hearing.

20. Mr. Haggray, however, was locked in without a disciplinary charge. When he asked the CO on duty, Shannon Anzalone, why he was locked in without charge, she told him to shut up, to stop asking questions, and that he would not be disrespectful on her tier. Upon information and belief, Shannon Anzalone is Defendant Damien Anzalone's wife.

21. After some back and forth, another CO, believed to be Robert Sullivan, threatened that he would "break" Mr. Haggray, that he had broken bigger inmates before, and that Mr. Haggray would be begging for the beating to stop.

22. Later, Mr. Haggray asked a Sergeant known as "Cowboy" why he was locked in without a ticket. "Cowboy's" response was that Mr. Haggray would be receiving a ticket. However, the ticket, which was issued by CO Shannon Anzalone, was not based on anything Mr. Haggray had done prior to being locked in but rather, it accused him of not following her order to lock in and causing a "disturbance" once already locked in.

23. The next day, February 1, Defendant Damien Anzalone approached Mr. Haggray and told him that if a Sergeant other than "Cowboy" had been on the unit the night before he would have been tazed and carried off in a bloody pulp to solitary confinement. Then he ticketed Mr. Haggray for arguing with him about CO Shannon Anzalone's ticket. Mr. Haggray requested a grievance form but Defendant Anzalone told him to "go f***" himself.

24. Later that day, Mr. Haggray reported his interaction with Defendant Anzalone to a Sergeant and requested a grievance form again. Although official grievance forms are supposed to be available for inmates, they rarely are and the Sergeant told Mr. Haggray to handwrite his and turn it in, which he did.

25. Soon after, Defendant Anzalone came back to transfer Mr. Haggray to another tier. Mr. Haggray left his cell with his property bag slung over his right shoulder and his left hand behind his back, per Defendant Anzalone's instructions.

26. As Defendant Anzalone escorted Mr. Haggray down the tier, they came to a vestibule area. Defendant Anzalone gestured for Mr. Haggray to continue in front of him. As he did, Defendant Anzalone struck him in the head. The blow dazed Mr. Haggray, who fell to the floor.

27. Defendant Anzalone continued punching Mr. Haggray as Defendant corrections officer William Reddy, who was near the vestibule, looked on. Several other corrections officers arrived, including Defendants Michael Poole, Orlando Cosentino, and John Does 1-4.

28. Mr. Haggray, who was still on the floor and not resisting, was handcuffed. Defendants Anzalone and Cosentino, and upon information and belief, Defendants John Does 1-2 continued beating him by stomping and kicking him in the face, mouth, head, and body, and yelling at him to stop resisting, even though he was not. Defendant Poole also tazed Mr. Haggray twice in his hip and backside, while another Defendant stomped on his ankle and another dragged his boot across Mr. Haggray's forehead a few times.

29. Mr. Haggray was then picked up, pushed against a wall, and kicked several more times in the legs, causing him to drop and yell in pain. He was picked up again, told to stop crying, and punched in the mouth.

6

30. At least three officers, including Defendants Reddy and John Does 3-4, stood by watching their fellow corrections officers brutally beat Mr. Haggray. Not a single one intervened.

31. Defendant Poole and two other officers then brought Mr. Haggray to a medical holding cell where one of them smacked him in the side of his head with his shoes, which had come off during the assault.

32. As a result of the beatings, Mr. Haggray suffered serious injuries including bruises and swelling on his face, cheek, forehead, and body, a cut ear, abrasions on his forehead, pain in his back, knee, ankle, and body, swelling and knots in his ankle, a broken partial denture, and hearing loss in his left ear. He also suffered from dizziness, headaches, and pain when breathing, he was unable to fully open his mouth due to jaw pain, and he coughed up blood for more than a week after.

33. Despite the vicious beating he had just endured and his visible and serious injuries, Mr. Haggray received only a dismissive, cursory medical exam from Defendant Nurse Darra Hotopp before being put into solitary confinement (SHU).

34. Upon entering SHU, Mr. Haggray was supposed to receive a medical exam by Defendant John/Jane Doe 5, the SHU nurse on duty that evening, but that exam consisted essentially of Defendant John/Jane Doe 5 taking his vitals and telling him to fill out a sick slip about his medical problems.

35. The next morning Mr. Haggray was still in serious pain, he began coughing up blood, and he was sensitive to light and so dizzy that he passed out in his cell. He woke up to a CO calling out his name. Defendant Nurse John/Jane Doe 6 came and took Mr. Haggray's vitals and his sick slip, gave him a container to spit into, and left.

36. From the time he entered SHU on the evening of February 1 until he transferred to a State facility on February 11, Mr. Haggray repeatedly complained to Defendants John/Jane Doe 5-8 on SHU rounds, to the medication administration nurses, and to the facility physician, believed to be Defendant Dr. Azaz Haider-Shah, about his injuries, he showed them the containers with his coughed-up blood, and he requested medical treatment. He also filed several sick slips requesting medical treatment and complaining of pain, dizziness, headaches, breathing difficulties, hearing loss, inability to fully open his mouth, a broken partial denture, and coughing up of blood.

37. Aside from receiving some Motrin a few days after he was injured, however, his complaints were largely ignored by the medical Defendants, and he was left coughing up blood, dizzy, in serious pain and with untreated injuries, including a broken partial denture which left him with missing teeth and prevented him from eating normally, and back pain and hearing difficulties that persisted for more than two years after the assault.

38. Mr. Haggray also spoke to supervisors and wrote several grievances about the assault, the tickets, the outcome of his disciplinary hearing, the threats he received prior to the assault, and his medical care to corrections supervisors including the inmate grievance coordinator, Chief Brian Mooney, Lieutenant Fitch, and others. His written grievances were either ignored or simply "disappeared" and his attempts to resolve these issues informally were also ignored.

39. Although his written grievances were supposed to be logged and investigated, none of the several lieutenants or supervisors Mr. Haggray spoke to claimed to know what happened to them, and they sent him back to the very people who ignored or disappeared his grievances.

40. Several higher-ups at the ACCF and the Albany County Sheriff's Office, including ACCF Chief Brian Mooney, the Tour Commander, the ACCF Captain, and at least one Sheriff's Office Investigator, were aware of the assault and purportedly reviewed reports and/or investigated it. Defendant former Superintendent Thomas Wigger also should have reviewed the appropriateness of Mr. Haggray's placements in lock in and in SHU.

41. However, upon information and belief, if any reviews or investigations occurred, they were superficial at best: neither Mr. Haggray nor any of the involved officers was interviewed, his grievances were deliberately ignored or disappeared, his attempts to seek help and redress were quashed, supervisors rubber-stamped subordinates' reports about the incidents, none of the involved officers was required to undergo more training, subjected to increased supervision, disciplined, or held accountable in any way for their actions, and no meaningful remedial or preventative action was taken.

42. Instead, higher-ups at the ACCF and at the Sheriff's Office looked the other way, allowing the continuance of a culture at the ACCF where unjustified brutality, threats, and retaliation against inmates occurred openly and with impunity by both rank and file and ranking corrections officers, and where inmates' efforts to seek help and redress were frustrated, suppressed and buried.

43. In addition, upon information and belief, the County took no adverse action against Defendants Correctional Medical Care, Inc. (CMC) or Emre Umar for its failures regarding Mr. Haggray despite CMC's well-documented history of delaying and denying clearly warranted medical care to inmates in its care.

44. According to several reports by the press and by the New York State Commission of Correction, CMC has been faulted in the deaths of at least nine inmates at facilities in

the state where it provides medical care. The Commission also faulted CMC for its gross negligence and incompetence, improper and inadequate medical care, and failures to implement its own policies, to make adequate records, and to have physician evaluations, and it made specific recommendations that counties inquire into CMC's fitness as a medical provider. The Commission has also made specific recommendations to Defendant Umar regarding the adequacy and quality of medical care his company provides.

45. The New York State Attorney General also investigated CMC pursuant to requests from the State Education Department and the State Medical Review Board, and found that it engaged in a host of improper practices, including failing to provide proper medical oversight, failing to employ properly credentialed medical personnel, failing to provide adequate staff, improperly substituting less qualified personnel, employment of unlicensed personnel, and engaging in the prohibited practice of corporate medicine.

46. Defendants CMC, Umar, and the County of Albany were or should have been aware of the deficiencies in medical care provided by CMC and of the risk of its continued provision of medical services to ACCF inmates.

47. Despite this, however, upon information and belief none of these Defendants required or requested additional oversight, supervision, or training, no meaningful steps were taken to ensure existing policies were being followed, and no other action was taken to ensure that employees provided adequate medical care or to prevent future violations of inmates' rights. Moreover, the County recently renewed its contract with CMC.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS ANZALONE, COSENTINO, POOLE, and JOHN DOES 1-2
### Violation of Constitutional Rights Under Color of State Law
### Excessive Use of Force

48. The Plaintiff incorporates by reference and realleges each and every allegation as stated in paragraphs 1 to 47.

49. The aforementioned assaults against Mr. Haggray by the above-named Defendants were undertaken intentionally, willfully, maliciously, sadistically, for the purpose of harming and punishing him.

50. Even though Mr. Haggray did not initiate the assault, did not resist, and was handcuffed for most of the incident, the Defendants punched, kicked, stomped and tazed him.

51. These actions violated Mr. Haggray's Constitutional right to be free from excessive force and cruel and unusual punishment and are also a violation of 42 U.S.C. § 1983.

52. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been seriously injured.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS REDDY and JOHN DOES 3-4
### Violation of Constitutional Rights Under Color of State Law
### Failure to Intervene/Failure to Protect

53. Plaintiff incorporates by reference and realleges each and every allegation as stated in paragraphs 1 to 52.

54. Corrections officials have a duty to take reasonable steps to protect inmates in their care and custody and to intervene when the Constitutional rights of such inmates are violated.

55. The above-named Defendants stood by and watched as their coworkers viciously beat Mr. Haggray. Not a single one of them made even a minimal effort to intervene or to otherwise protect him.

56. The deliberate failures of these Defendants violated Mr. Haggray's Constitutional right to be free from excessive force and cruel and unusual punishment and are also a violation of 42 U.S.C. § 1983.

57. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been seriously injured.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS CORRECTIONAL MEDICAL CARE, INC., EMRE UMAR, DR. HAIDER-SHAH, DARRA HOTOPP, and JOHN/JANE DOES 5-8**
Violation of Constitutional Rights Under Color of State Law
**Failure to Provide Medical Treatment/Deliberate Indifference to Serious Medical Needs**

58. Plaintiff incorporates by reference and realleges each and every allegation as stated in paragraphs 1 to 57.

59. Mr. Haggray had serious medical needs which were deliberately ignored or neglected by the above-named Defendants who failed to adequately examine or treat his injuries, including his pain, dizziness, headaches, bruises and swelling, painful breathing, coughing up of blood, broken partial denture, and hearing loss.

60. As the private entity responsible for providing medical care to ACCF inmates on behalf of the County of Albany, Defendants CMC and Emre Umar are liable for the heretofore described actions of its employees, Defendants Haider-Shah, Hotopp, and John/Jane Does 5-8.

61. The aforementioned actions and inactions of the above-named Defendants violated Mr. Haggray's Constitutional right to be free from cruel and unusual punishment and are also a violation of 42 U.S.C. § 1983.

62. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been seriously injured.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS COUNTY OF ALBANY, CRAIG APPLE, THOMAS WIGGER, CORRECTIONAL MEDICAL CARE, INC., and EMRE UMAR**
**Violation of Constitutional Rights Under Color of State Law**
**Implementation of Policies that Directly Violate Constitutional Rights/Failure to Implement Policies and Practices to Avoid Violations of Constitutional Rights and Failure to Train/Supervise Employees and Agents**

63. Plaintiff incorporates by reference and realleges each and every allegation as stated in paragraphs 1 to 62.

64. Defendant County of Albany is accountable for the policies, procedures, and practices, actions, hiring, and supervisory decisions of its policy makers.

65. As a senior policy-maker for the Albany County Sheriff's Office, Defendant Sheriff Apple is responsible for the approval, establishment, and enforcement of the policies, customs, and practices of the County as they apply to the ACCF, and for the hiring, training, and supervision of his subordinates at the Sheriff's Office and the ACCF.

66. During his tenure as Superintendent, Defendant Wigger was directly responsible for day-to-day operations at the ACCF and for the day-to-day supervision of staff there.

67. Upon information and belief, Defendants Apple and Wigger, and the County of Albany through these Defendants, have failed to institute and implement appropriate policies at the Sheriff's Office and the ACCF on a variety of subjects including the use of force, the

duty to protect and intervene, retaliation, the right to adequate medical care, and other areas of importance to the Constitutional rights of inmates.

68. In the alternative, and upon information and belief, these Defendants have instituted policies addressing these topics but through gross negligence have demonstrated deliberate indifference to inmates by failing or refusing to enforce these policies.

69. Upon information and belief, these Defendants have also failed to adequately hire, screen, and supervise corrections officers and medical staff, and to provide adequate training regarding their duties as they relate to the Constitutional rights of inmates in their care.

70. In accordance with their policies, customs, or practices, and/or through their failures to act on information indicating violations were occurring, and/or through their gross negligence in supervising subordinates, the above-named Defendants caused and allowed Mr. Haggray's rights to be violated.

71. As heretofore alleged, the baseless lock-in, retaliation, and assault against Mr. Haggray involved both rank and file and ranking officers, supervisors signed off on their subordinates' reports of the incidents, and several higher-ups at the ACCF and the Sheriff's Office knew about the incidents and were supposed to review and/or investigate.

72. Despite learning of these violations, however, upon information and belief, these Defendants failed to meaningfully investigate or take any meaningful remedial or preventative action and none of the several involved officers or their supervisors were disciplined or held accountable for their actions. Instead, these Defendants ratified and implicitly authorized these violations by turning a blind-eye to them.

73. The actions and inactions of the above-named Defendants violated Mr. Haggray's Constitutional right to be free from cruel and unusual punishment and are also a violation of 42 U.S.C. § 1983.

74. Defendants County of Albany, CMC, and Emre Umar are accountable for the policies, procedures, and practices, actions, hiring, and supervisory decisions of their policy makers, including those that pertain to the medical care of ACCF inmates.

75. Defendants CMC and Umar are accountable for the policies, procedures, practices, hiring and supervisory decisions, and actions and inactions of its employees at the ACCF.

76. Upon information and belief, the above-named Defendants have failed to institute and implement appropriate policies to ensure ACCF inmates receive adequate medical care, and have failed appropriately hire, screen, supervise and train their medical staff regarding their duties to the inmates in their care.

77. In the alternative, and upon information and belief, these Defendants have instituted such policies but through gross negligence have demonstrated deliberate indifference to inmates by failing or refusing to enforce them, deliberately ignoring repeated violations of inmates' rights to adequate medical care, and failing to appropriately hire, screen, supervise, and train their medical staff regarding their duties to the inmates in their care.

78. In accordance with their policies, customs, or practices, and/or through their failures to act on information indicating violations were occurring, and/or through their gross negligence in supervising subordinates, the above-named Defendants caused and allowed Mr. Haggray's rights to be violated by failing to provide him with adequate medical care for his serious injuries.

79. As heretofore described, the above-named Defendants were aware of CMC's history of violations, negligence, and deliberate indifference with regard to the medical care it provides to inmates, yet failed to act on this information.

80. The actions and inactions of the above-named Defendants violated Mr. Haggray's Constitutional right to be free from cruel and unusual punishment and are also a violation of 42 U.S.C. § 1983.

81. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been seriously injured.

## DEMAND FOR PUNITIVE DAMAGES

82. The actions and inactions of the Defendants were extreme, outrageous, and shock the conscience of a reasonable person and an award of punitive damages is appropriate. Punitive damages are sought only from the individual Defendants.

## DEMAND FOR TRIAL BY JURY

83. The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Nyjew Haggray requests that this Honorable Court grant him the following relief:

A. A judgment in his favor against all Defendants for compensatory damages in an amount to be determined by a properly charged jury;

B. A judgment in his favor against all individual Defendants for punitive damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorney's fees and the costs of this action pursuant to 42 USC § 1988;

D.  Any other relief this Court finds to be just, proper, and equitable.

Dated:  January 9, 2016
       Albany, New York

Respectfully submitted,

s/ **Jessica M. Gorman**
Jessica M. Gorman
USDC NDNY Bar Roll No.: 516068
Law Office of Jessica M. Gorman
74 Chapel Street, 2nd Floor
Albany, New York 12207
T: 518-795-5022
F: 518-514-1180
Electronic mail:
jmgorman@jmgormanlaw.com

**ATTORNEY FOR THE PLAINTIFF
NYJEW HAGGRAY**