UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NYJEW HAGGRAY,

    Plaintiff,

v.

COUNTY OF ALBANY, CRAIG APPLE, Albany County Sheriff, THOMAS WIGGER, former Superintendent, MICHAEL POOLE, Sergeant, DAMIEN ANZALONE, Corrections Officer, ORLANDO COSENTINO, Corrections Officer, WILLIAM REDDY, JOHN DOES 1-4, Corrections Officers, CORRECTIONAL MEDICAL CARE, INC., EMRE UMAR, DR. S. AZAZ HAIDER-SHAH, Facility Physician, DARRA HOTOPP, Registered Nurse, JOHN/JANE DOES 5-8, nurses,

    Defendants.

Index No.:9:16-cv-00032 (TJM/DEP)

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Jessica M. Gorman
USDC NDNY Bar Roll No.: 516068
Law Office of Jessica M. Gorman
74 Chapel Street, 2nd Floor
Albany, New York 12207
T: 518-795-5022
F: 518-514-1180
Electronic mail: jmgorman@jmgormanlaw.com

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………..1

STATEMENT OF FACTS…………………………………………………...1

ARGUMENT………………………………………………………………2

    Point I: The Deliberate Indifference Claim Is Sufficiently
    Alleged in the Complaint and Should Not Be Dismissed
    For Failure to State a Claim……………………………………………3

    Point II: Plaintiff's Monell Claim and Supervisory Claims
    Against Defendants Correctional Medical Care and Umar
    Are Sufficiently Alleged in the Complaint and Should Not
    Be Dismissed for Failure to State a Claim……………………………….7

CONCLUSION…………………………………………………………..12

# TABLE OF AUTHORITIES

*Benitez v. Parmer,* 2013 U.S. Dist. LEXIS 135907, at *13 (NDNY 2013)………………..2

*Chance v. Armstrong*, 143 F.3d 698, 701(2d Cir. 1998)…………………………………...3

*Ashcroft v. Iqbal,* 556 U.S. 662, at 678-679 (2009)………………………………………..3

*Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003)………………………………………..3

*Salahuddin v. Goord,* 467 F.3d 263, 279-280 (2d Cir. 2006)……………………………..3

*Rashid v. Hussain,* 1997 U.S. Dist. LEXIS 16184, *12-13 (N.D.N.Y. Sept. 3, 1997)……4

*Degrafinreid v. Ricks*, 417 F.Supp.2d 403, 412 (S.D.N.Y. 2006)…………………………4

*Ellis v. Guarino,* 2004 U.S. Dist. LEXIS 16748, *34;
2004 WL 1879834 (S.D.N.Y. Aug. 25, 2004)……………………………………………..4

*Byng v. Campbell,* 2009 U.S. Dist. LEXIS 125270, *38-39
(N.D.N.Y. Oct. 13, 2009)…………………………………………………………………..5

*Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996)………………………………….7

*Thompson v. Linvatec Corp.*, 2008 U.S. Dist. LEXIS 13959,
*6-7; 2008 WL 541164 (N.D.N.Y. Feb. 25, 2008)………………………………………..7

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978)…………………………..8

*Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 125-127 (2d Cir. 2004)…………...8

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484 (1986)…………………………..8

*St. Louis v. Praprotnik*, 485 U.S. 112, 126-127 (1988)…………………………………..8

*Castilla v. City of New York,* 2012 U.S. Dist. LEXIS 162779, at *11-12;
2012 WL 5510910 (S.D.N.Y. Nov. 14, 2012)……………………………………………...8

*Hogan v. Franco,* 896 F.Supp. 1313, 1319 (N.D.N.Y. 1995)……………………………..8

*Vann v. City of New York*, 72 F.3d 1040, at 1049 (2d Cir. 1995)………………………..9

*Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)……………………………………..9

*Wright v. Smith,* 21 F.3d 496, 501-502 (2d Cir. 1994)…………………………………..9

*Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991)…………10

*Reynolds v. Guiliani,* 506 F.3d 183, 192 (2d Cir. 2007)……………….…………..11

# INTRODUCTION

This action seeks redress for the deprivation, by Defendants, of Plaintiff's constitutional rights while he was incarcerated at the Albany County Correctional Facility in 2013. The Defendants deprived the Plaintiff of these guaranteed rights by assaulting him and failing to provide appropriate medical care.

This memorandum of law is submitted in response to Defendants Correctional Medical Care and Emre Umar's motion to dismiss for failure to state a claim for deliberate indifference and for failure to establish a *Monell* claim.

# STATEMENT OF FACTS

The Plaintiff, Nyjew Haggray, was viciously beaten by several corrections officers at the Albany County Jail on February 1, 2013. (Complaint ¶18). He suffered several injuries as a result, including hearing loss in one ear, a broken partial denture, swelling and bruising on his face, cheek, forehead, and body, swelling and knots on his ankle, a cut ear, and abrasions on his forehead. (Complaint ¶32). He was also unable to fully open his mouth due to the pain in his jaw, and he suffered from headaches and dizziness, and coughed up blood for more than a week after. (Complaint ¶¶32-35). He also passed out in his cell the following day from his severe dizziness and sensitivity to light, and he was in severe pain. (Complaint ¶35). His back pain and hearing loss persisted for more than two years after the assault. (Complaint ¶37).

Mr. Haggray repeatedly verbally reported his symptoms to medical staff and requested medical care, and he also wrote several grievances, all to no avail. (Complaint ¶¶36, 38-39). Despite his repeated complaints and the fact that many of his injuries were visible, Defendant medical staff failed to help him. (Complaint ¶¶33-39). Instead of trying to help Mr. Haggray, these Defendants essentially tossed a few Motrin to him and told him to fill out a sick slip.

1

(Complaint ¶37). They disregarded his serious and painful injuries, they failed to test or attempt to treat his hearing loss, to even attempt to examine the cause of or treat his spitting up of blood, to schedule him with a dentist to repair his broken denture so that he could eat normally, or to treat or even examine the reasons for his headaches, dizziness, and fainting.

The Defendants' disregard of Mr. Haggray's serious medical needs was completely consistent with the practices of Correctional Medical Care (CMC) all over the State of New York. CMC has a well-established and well-documented history of failing to provide adequate medical care to inmates in the jails where it is paid to provide such care. (Complaint ¶¶44-45). It has been faulted numerous times by the New York State Commission of Correction for these failures and for its generally grossly negligent medical practices. (Complaint ¶44). It has also been faulted by the New York State Attorney General's office for engaging in a host of improper business and medical practices, including improperly practicing corporate medicine, failing to provide proper medical oversight, and failing to employ adequate or properly credentialed and qualified staff, among other gross deficiencies. (Complaint ¶45).

Mr. Haggray brings this lawsuit for redress of these violations in the context of this background. The Defendants have moved to dismiss the claims against Defendants Umar and CMC for failure to state a claim of deliberate indifference and failure to state a *Monell* claim. Plaintiff opposes this motion and respectfully suggests that his Complaint is sufficiently pled and Defendants' motion should be denied.

## **ARGUMENT**

On a Rule 12(b)(6) motion to dismiss, "the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party." *Benitez v. Parmer,* 2013 U.S. Dist. LEXIS 135907, at *13 (NDNY 2013). At this early stage, the issue is

not whether plaintiff is likely to prevail but rather, whether he "is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701(2d Cir. 1998)(internal quotations omitted). So long as the complaint contains sufficient factual allegations to establish facial plausibility, the reasonable inference that the defendant is liable for the misconduct alleged, it should not be dismissed. *Ashcroft v. Iqbal,* 556 U.S. 662, at 678-679 (2009) (citing and quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, at 556, 570 (2007)).

## POINT I

### THE DELIBERATE INDIFFERENCE CLAIM IS SUFFICIENTLY ALLEGED IN THE COMPLAINT AND SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM

To assert a claim for deliberate indifference to a serious medical need under the Eighth Amendment, plaintiff must sufficiently allege that he had a serious medical need, and that defendants were deliberately indifferent to this serious medical need. *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003)(citations omitted). Specifically, the defendants must have deprived plaintiff of adequate, reasonable medical care, and such deprivation must have caused or been likely to cause the inmate harm. *Salahuddin v. Goord,* 467 F.3d 263, 279-280 (2d Cir. 2006). Defendants must have also been aware that their conduct created a risk to the inmate. *Id.* at 281. In other words, a defendant is deliberately indifferent when he "'knows of and disregards an excessive risk to inmate health or safety,'" when "the risk was obvious or otherwise must have been known to a defendant…" (*Brock* at 164 (2d Cir. 2003)(quoting and citing *Farmer v. Brennan*, 511 U.S. 825, 837, 842; 128 L.Ed.2d 811; 114 S.Ct. 1970 (1994)), and when he "consciously chooses 'an easier and less efficacious' treatment plan." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)(quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)).

Plaintiff's injuries must also be sufficiently serious. The boundaries of this standard are imprecise, but several factors should be considered, including whether a reasonable doctor or

3

patient would consider it to be worthy of treatment, whether the patient's daily activities were significantly impacted by it, and whether the patient was in chronic and substantial pain. *Brock* at 162 (2d Cir. 2003)(citing *Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) and quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The "chronic and substantial pain" need not be extreme to satisfy the Eighth Amendment, nor must the medical condition be or become life-threatening. *Brock* at 163-164. Rather, a serious medical need exists when the deprivation of medical care causes or perpetuates pain (*Brock* at 163 (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)), or when it "'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rashid v. Hussain,* 1997 U.S. Dist. LEXIS 16184, *12-13 (N.D.N.Y. Sept. 3, 1997)(internal quotations omitted).

Here, the factual allegations in the Complaint sufficiently establish that Mr. Haggray's injuries were serious[1]. Those injuries included facial and body bruising and swelling, a cut ear, forehead abrasions, significant pain in his back, knee, and ankle, swelling and knots in his ankle, dizziness, headaches, pain when breathing, and he was unable to fully open his mouth due to jaw pain, he coughed up blood for more than a week, he sustained a broken partial denture, and he lost hearing in one ear. (Complaint ¶32). Not only were many of Mr. Haggray's injuries visible and some of them prolonged (Complaint ¶¶32, 37), but there can be no reasonable question that they were serious.

Sudden hearing loss is a serious medical condition. *Degrafinreid v. Ricks*, 417 F.Supp.2d 403, 412 (S.D.N.Y. 2006)("Objectively, the ability to hear is a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians."); see also *Ellis v. Guarino,*

---

[1] Defendants' motion was submitted on behalf of Defendants Umar and CMC. However, Point One, Part B of the memorandum of law argues failure to state a claim as to Defendants Hotopp and Haider-Shah, who Mr. Symer does not represent. Therefore, Plaintiff does not believe a response as to these Defendants is required, but he will do so in the interest of caution.

2004 U.S. Dist. LEXIS 16748, *34; 2004 WL 1879834 (S.D.N.Y. Aug. 25, 2004). Mr. Haggray was also so dizzy that he passed out in his cell the following day. (Complaint ¶35). Such severe dizziness, particularly in the context of his other injuries, is a serious medical need. *Ellis* at *34 ("Moreover, dizziness and ringing in the ears severe enough to compel Plaintiff to request medical attention repeatedly undoubtedly affect balance and hearing and thus necessarily affect daily life activities…").

Mr. Haggray's broken partial denture, missing teeth, and jaw pain also rendered him unable to fully open his mouth or to eat normally, which clearly impacted his daily functioning. (Complaint ¶¶32, 36-37). He also suffered from substantial pain, and his back pain (and hearing loss) persisted for more than two years. (Complaint ¶¶32, 36-37). Chronic and substantial pain is considered a serious medical need. *Byng v. Campbell,* 2009 U.S. Dist. LEXIS 125270, *38-39 (N.D.N.Y. Oct. 13, 2009); see also *Rashid* at 13 (citing *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) for the proposition that it is sufficient for deliberate indifference purposes if a deprivation prolongs just suffering, and not necessarily pain).

In sum, as alleged in the Complaint, Mr. Haggray's numerous injuries, including some that persisted for years, were serious. (Complaint ¶¶32-33, 35-37); see *Ellis* at *33-34 (plaintiff's facial swelling, facial and ear contusions, small cut in his eye, shoulder abrasions, blurred vision, headaches, severe pain, and dizziness and ringing in his ears for several days constituted a serious medical condition, and "Plaintiff's injuries and how he allegedly received them suggest a likelihood of head trauma, significant eye damage and potential hearing loss, all of which a reasonable doctor would find important and worthy of treatment.").

Mr. Haggray's allegations also sufficiently establish that Defendants were aware of his serious injuries, and that they were deliberately indifferent to them. After he was brutally beaten, Mr. Haggray had visible injuries, including facial and bodily bruising and swelling, forehead

5

abrasions, swelling and knots in his ankle, and a broken partial denture. (Complaint ¶32). Despite this, Defendant Hotopp gave him only a dismissive, cursory medical exam. (Complaint ¶33). She did not she meaningfully examine him, despite his condition, nor did she refer him to a physician or for emergency care. Instead, she dismissed him and told him to fill out a sick slip. (Complaint ¶34). The John/Jane Doe 5 SHU nurse was similarly dismissive, and also failed to examine Mr. Haggray as required, to refer him to a physician, or to refer him for emergency care. (Complaint ¶34). Instead, this Defendant merely took his vitals and told him to fill out a sick slip. (Complaint ¶34). Even after he was coughing up blood and passed out in his cell the following day, Defendant nurse John/Jane Doe 6 failed to examine him or to refer him for appropriate medical attention. (Complaint ¶35). Instead, this Defendant took his vitals, gave him a container to spit blood into, took his sick slip, and left. (Complaint ¶35).

Mr. Haggray followed the nurses' instructions to fill out sick slips, and he also utilized the facility's grievance procedures, to no avail. (Complaint ¶¶35-38). In addition, he repeatedly verbally complained to the SHU nurses and the medication administration nurses about his medical condition, including his visible injuries and his non-visible hearing loss, dizziness, headaches, and severe pain. (Complaint ¶¶36, 38-39). His complaints and requests for care were all but ignored. (Complaint ¶¶35-39). He also reported his symptoms to the facility physician, Defendant Haider-Shah, showed him his containers with coughed-up blood, and requested medical treatment. (Complaint ¶36). But Defendant Haider-Shah failed to do much of anything besides give him some Motrin, which, as expected, did not resolve his injuries. (Complaint ¶37).

Despite Mr. Haggray's repeated verbal and written complaints and requests, and his physical condition, Defendants did not treat or even bother to test his hearing loss, they did not examine the cause of him coughing up blood for a week, they ignored his head and facial

6

injuries, ignored the fact that he was dizzy and had passed out, and did not get him treatment for his broken partial denture so that he could eat normally again. (Complaint ¶¶34-38).

Mr. Haggray's claim is not based on a mere disagreement over treatment, or on mere negligence, neither of which would be sufficient to establish deliberate indifference. *Rashid* at 15. Rather, it is based on Defendants' essentially wholesale dismissal and conscious disregard of his serious and legitimate medical needs and their apparent unwillingness to take the steps necessary to ensure that he received even a modicum of adequate care. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996). The sum total of Defendants' response to Mr. Haggray's medical injuries was to throw some Motrin and a few sick slips at him and call it a day. Given the seriousness of his injuries, this response was woefully inadequate, it prolonged his pain, suffering, and injury, and it was deliberately indifferent to his serious medical needs. *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003); *Salahuddin v. Goord,* 467 F.3d 263, 279-280 (2d Cir. 2006).

On a motion to dismiss, the plaintiff must provide sufficient factual allegations to establish that he has a right to relief that is more than speculative. *Thompson v. Linvatec Corp.*, 2008 U.S. Dist. LEXIS 13959, *6-7; 2008 WL 541164 (N.D.N.Y. Feb. 25, 2008). Plaintiff respectfully suggests that his Complaint sufficiently establishes that Defendants were deliberately indifferent to his serious medical needs, and Defendants' motion should be denied.

## POINT II
### PLAINTIFF'S MONELL AND SUPERVISORY CLAIMS AGAINST DEFENDANTS CORRECTIONAL MEDICAL CARE AND UMAR ARE SUFFICIENTLY ALLEGED IN THE COMPLAINT AND SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM

*Monell* claims against private corporations like Correctional Medical Care (CMC) are analyzed under the same standard that is used for municipalities. That is, liability is found for

the entity's express unconstitutional policies and decisions, as well as for constitutional deprivations that arise from its unofficial customs or practices. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978). Liability does not lie against an entity for the acts of its employees under *respondeat superior,* but instead for deprivations that are carried out by persons who "may fairly be said to represent official policy…" of the municipality, such that the acts may be fairly attributable to it. *Monell* at 691, 694 (1978); see also *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 125-127 (2d Cir. 2004)(citations omitted).

These persons include authorized policymakers and supervisors with final policymaking authority, and subordinates to whom such authority is delegated. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484 (1986); see also *St. Louis v. Praprotnik*, 485 U.S. 112, 126-127 (1988). A subordinate's unconstitutional actions are also attributed to an entity when an authorized policymaker orders or ratifies, is aware of and consciously ignores, is deliberately indifferent to, or tolerates the actions. *Amnesty Am.* at 126-127 (2d Cir. 2004)(citations omitted); see also *Turpin v. Mailet*, 619 F.2d 196, 200-202 (2d Cir.1980).

Liability is also established by evidence that unconstitutional acts are part of a practice sufficiently widespread to constitute a custom of which a supervising policymaker must have had actual or constructive knowledge, or by showing that an entity's failure to provide adequate training or supervision of its employees rises to the level of deliberate indifference. *Castilla v. City of New York,* 2012 U.S. Dist. LEXIS 162779, at *11-12; 2012 WL 5510910 (S.D.N.Y. Nov. 14, 2012)(citations omitted). In addition, liability can be inferred from circumstantial proof that unconstitutional acts are tolerated, including, for example, through the unofficial, informal acts and omissions of supervisory officials, through municipal inaction in the face of violations, and through failures to adequately investigate, discipline, or correct violations. *Hogan v. Franco,* 896 F.Supp. 1313, 1319 (N.D.N.Y. 1995). Inadequate investigations of violations can indicate

not only the existence of a custom or policy, but also failure to train or supervise. *Hogan* at 1319-1320 (N.D.N.Y. 1995); see also *Vann v. City of New York*, 72 F.3d 1040, at 1049 (2d Cir. 1995)(noting that deliberate indifference can be shown when "need for more or better supervision to protect against constitutional violations was obvious.")).

No matter the liability path, however, section 1983 liability requires personal involvement of the defendant. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986)(citing *Rizzo v. Goode,* 423 U.S. 362, 370-71, 46 L.Ed.2d 561, 96 S.Ct. 598 (1976)). Personal involvement is established when the official 1) directly participates in the violation, 2) learns of the violation and fails to remedy it, 3) creates or allows to continue a policy or custom under which the violation occurred, or 4) is grossly negligent in training or supervising subordinates who committed the violation. *Williams v. Smith* at 323-324 (2d Cir. 1986)(citations omitted); see also *Wright v. Smith,* 21 F.3d 496, 501-502 (2d Cir. 1994)(finding that a supervisory official, "...after learning of a violation through a report or appeal,…failed to remedy the wrong," was personally involved and liable) (internal citations omitted) (quoting *Williams v. Smith, supra* at 323).

Here, the Complaint establishes that Defendant CMC, and its President, Defendant Emre Umar, are liable for the acts of its employees. Specifically, Plaintiff maintains that these Defendants are liable either through their failure to establish appropriate policies and to appropriately hire, screen, and supervise their employees, or through their grossly negligent failures to enforce their policies and their deliberate ignorance of repeated violations of inmates' rights to adequate medical care. (Complaint ¶¶76-79).

As discussed above, CMC employees wholly failed to monitor or treat Mr. Haggray's serious medical conditions and dismissed his repeated complaints and requests for care. (Complaint ¶¶34-39). This conduct is characteristic of CMC and its employees, as has been established in numerous other cases in this State (and in other states). As alleged in the

9

Complaint, the New York State Commission of Correction has faulted CMC for the deaths of at least nine inmates at facilities in this State where it is contracted to provide medical care. (Complaint ¶44). The Commission also faulted CMC for its gross negligence and incompetence, for improper and inadequate medical care, for its failures to implement its own policies, to make adequate records, and to have physician evaluations. (Complaint ¶44). Moreover, the Commission has made specific recommendations to Defendant Umar regarding the adequacy and quality of the medical care his company provides to inmates. (Complaint ¶44).

In addition, the New York State Education Department and the State's Medical Review Board have both recommended that the State look into CMC's practices. (Complaint ¶45). Pursuant to these recommendations, the New York State Attorney General's Office investigated CMC and found that it engaged in a whole host of improper practices, including failure to provide proper medical oversight, failure to employ properly credentialed and adequate medical staff, substituting less qualified staff, employing unlicensed staff, and engaging in the prohibited practice of corporate medicine. (Complaint ¶45). Defendant Umar signed the settlement agreement with the Attorney General's Office on behalf of his company.

Moreover, since the reports alleged in the Complaint involve the Defendants, they know that these patterns and practices are widespread, that they have occurred at several different jails across the State, and that they encompass a range of issues and medical conditions, from failures to adequately screen and treat inmates who later committed suicide, to failures to properly monitor and treat inmates suffering from drug or alcohol withdrawal, to failures to properly treat and monitor inmates' physical illnesses and conditions. *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991)(overruled in part on other grounds)(a policy or custom can be inferred from circumstantial proof that an entity had notice of violations and failed to investigate or remedy them).

These failures and practices are no less present and persistent at the Albany County Jail where Mr. Haggray was incarcerated and where CMC employees failed to monitor or treat his serious medical conditions and dismissed his repeated complaints and requests for care. (Complaint ¶¶34-39). The only meaningful difference between what happened to Mr. Haggray and to the inmates in the cases cited in the Complaint (¶¶44-45) is that Mr. Haggray's condition was apparently and fortunately not life-threatening, so Defendants' gross lack of care did not kill him.

In addition, Defendant Umar is fully aware of the widespread failures and practices of his company. In each of the reports cited in the Complaint, the Commission made specific recommendations to Defendant Umar to, in essence, clean up his company. (Complaint ¶44). As President of CMC, he was also a signatory to the settlement agreement between his company and the Attorney General's Office where the Office found that CMC engaged in a glut of improper practices. (Complaint ¶45). In addition, both Defendant Umar and CMC have been defendants in numerous lawsuits in New York State and other places alleging a variety of improper and unconstitutional practices. Defendant Umar cannot claim not to know what is happening at the facilities where his company is paid to provide medical care to inmates, as he has been made aware of it on numerous occasions by no less than two different State entities. (Complaint ¶¶44-45). Defendant Umar's implicit acquiescence to the pervasive failures in his company makes him liable. *Reynolds v. Guiliani,* 506 F.3d 183, 192 (2d Cir. 2007).

Plaintiff needs only to establish one path of liability under *Monell*. *Monell* at 690-691. At a minimum, Plaintiff's factual allegations sufficiently establish that CMC has a pattern and practice of providing grossly negligent medical care to inmates under its care, that it has a pattern and practice of failing to follow its own policies, and that it has a pattern and practice of failing to hire qualified and competent staff and to supervise its employees. (Complaint ¶¶44-45).

Plaintiff's factual allegations also sufficiently establish Defendant Umar's liability through, at a minimum, his knowledge of and repeated failures to remedy violations, and his creation or continuance of a custom under which gross violations occur.  Plaintiff maintains that his factual allegations regarding CMC and Defendant Umar are well-founded and sufficiently establish a *Monell* claim, and for this reason he did not attach to his Complaint the Commission reports, the settlement agreement, or other voluminous evidence and documentation of their widespread misconduct.  However, should the Court want more detail about these allegations, Plaintiff would be happy to amend his complaint to provide it.

## **CONCLUSION**

For the reasons stated herein, the Plaintiff respectfully suggests that the Court denies Defendants' motion to dismiss.  Plaintiff also requests that he be granted leave to amend his complaint should the Court find it deficient for purposes of this motion.

Dated:  April 22, 2016
Albany, New York

Respectfully submitted,

s/ **Jessica M. Gorman**
Jessica M. Gorman
USDC NDNY Bar Roll No.: 516068
Law Office of Jessica M. Gorman
74 Chapel Street, 2nd Floor
Albany, New York 12207
T: 518-795-5022
F: 518-514-1180
Electronic mail:
jmgorman@jmgormanlaw.com

**ATTORNEY FOR THE PLAINTIFF**