UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**NYJEW HAGGRAY,**

                                                **Plaintiff,**

   v.                                                                             9:16-CV-32

**COUNTY OF ALBANY, et al.,**

                                                **Defendants.**
_____

Thomas J. McAvoy, Senior District Judge.

## DECISION & ORDER

Plaintiff Nyjew Haggray commenced this action pursuant to 42 U.S.C. § 1983 and state law, alleging that Defendants violated his rights while in their custody at the Albany County Jail. Defendants filed motions to dismiss Plaintiff's Amended Complaint and various cross-claims. See dkt. #s 71, 72, 73. The parties have briefed the issues. The Court has determined that oral argument on the motions is not necessary and will render its decision based on the filings.

**I.   BACKGROUND**

This case arises out of Plaintiff Nyjew Haggray's incarceration at the Albany County Jail ("the Jail"). Plaintiff claims that corrections officers beat him, retaliated against him for complaining about the beating, and that the Jail and medical staff at the Jail failed to provide him with adequate care to address his serious medical needs. He names as Defendants the County of Albany, the Sheriff in charge of the Jail, various corrections officers, medical staff and the private provider contracted to supply medical care at the Jail.

Plaintiff filed his initial Complaint on January 10, 2016. See dkt. # 1. Some of the Defendants answered, while others filed motions to dismiss. The parties eventually agreed to permit Plaintiff to amend his Complaint, and he did so on September 7, 2016. See dkt. # 56. Defendants Damien Anzalone, Craig Apple, Orlando Consentino, County of Albany, Michael Poole, William Reddy and Thomas Wigger filed answers and cross-claims against Defendants Correctional Medical Care, Inc., Azaz Haider-Shah, Darra Hotopp, and Emre Umar. See dkt. ##s 64-70. Defendants Corectional Medical Care and Emre Umar (the "CMC Defendants") filed a motion to dismiss Plaintiff's claims and Defendants' cross-claims. See dkt. #71. Defendants County of Albany, Anzalone, Apple, Consentino, Poole, Reddy and Wigger (the "Albany Defendants") filed a motion seeking leave to join in the CMC Defendants' motion. See dkt. # 72. Defendants Haider-Shah, Darra Hotopp, and John/Jane Does 5-8 filed a motion to dismiss and informed the Court that they joined in the CMC Defendants' arguments. See dkt. # 73. The parties have briefed the issues, bringing the case to its present posture.

## II.     Legal Standard

The Defendants have filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). The same standard applies to motions to dismiss cross-claims. Brown v. Koch Mashinenbau GMBH, No. 3:10-cv-449, 2010 U.S. Dist. LEXIS 114058 at *3 (Dist. Conn. Oct. 27, 2010).

## III. ANALYSIS

The CMC Defendants have filed motions to dismiss Plaintiff's claims and the cross-claims of the Albany Defendants. Defendants Dr. S. Azaz Haider-Shah, Nurse Darra Hotopp, and John/Jane Does 5-8 have likewise moved to dismiss Plaintiff's claims and have informed the Court that they adopt the arguments made in the CMC Defendant's motion and brief in support. See Affirmation of Mark O. Chieco, Esq., dkt. # 73-1, at ¶ 3.[1] The Albany Defendants have have moved the Court to permit them to

---

[1] These Defendants state that they move pursuant to Federal Rule of Civil Procedure 12(c), but they join in the motion of the other medical Defendants, who move pursuant to Rule 12(b)(6). Dr. Haider-Shaw and Nurse Hotopp do not provide their own memorandum of law and offer no explanation why the Court should apply Rule 12(c) rather than Rule 12(b)(6). It appears to the Court that Defendants hope to have the Court consider medical records attached to their moving papers, which Defendants claim indicate that Plaintiff did not suffer from a serious medical need. Defendants apparently believe that a motion under Rule 12(c) would permit the Court to consider these documents in deciding the motion. "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-Z Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). "'A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'" Id. (quoting Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)). A document is "integral" to the complaint when the "complaint 'relie[d] heavily upon its terms and effect[.]'" Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d

participate in the CMC Defendants' motion. See dkt. # 72. The Court will address that issue separately. The Albany Defendants do not address the motion to dismiss their cross-claims. Id.

The Court will address the CMC Defendant's motion in substance, as only the CMC Defendants offer substantive arguments seeking to dismiss Plaintiff's claims.

### A. Correctional Medical Care, Inc. and Emre Umar's Motion

Defendants Correctional Medical Care, Inc. ("CMC"), and Emre Umar seek dismissal of Plaintiff's Eighth Amendment claim against them, as well as the cross-claims raised by the Albany Defendants.

### i. Constitutional Claims

CMC first argues that Plaintiff has alleged insufficient facts to state a claim of deliberate indifference to a serious medical need. Plaintiff has not, Defendants contend, alleged any individual involvement by Defendant Umar and has failed to allege

---

Cir. 2002)). Here, there is no indication that the Plaintiff relied on the medical records in drafting his Amended Complaint, nor that the medical records are necessary to prove his ability to go forward on his Section 1983 claim. See Sira, 380 F.3d at 67 (finding that an order reversing loss of good time credits was a prerequisite to filing the Complaint, and therefore "incorporated into the pleading[.]"). The medical records are simply evidence which may or may not prove his claim at some later stage in the proceeding. The Court will not consider them at this time. See Sira, 380 F.3d at 67 (refusing to incorporate transcripts from the proceeding reversing the loss of such credits because "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."). The Court also declines to covert the Rule 12 motion into a motion for summary judgment, which would permit consideration of those documents. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Discovery is necessary to determine Plaintiff's particular injuries, as well as the value of the medical records as evidence.

4

that constitutional violations occurred pursuant to a policy or custom established by CMC. Plaintiff responds that the Amended Complaint contains allegations sufficient to establish both that his injuries were a result of an official policy and/or custom, and that Umar is subject to supervisory liability.

The Amended Complaint raises two separate causes of action against CMC and Umar. Count Three alleges a violation of Plaintiff's constitutional rights by CMC, Umar, and other medical professionals. Plaintiff alleges that he "had serious medical needs which were deliberately ignored or neglected" by those defendants, who did not "adequately examine or treat his injuries, including his pain, dizziness, headaches, bruises and swelling, painful breathing, coughing up of blood, broken partial denture, and hearing loss." Id. at ¶ 61. Plaintiff further alleges that "[a]s the private entity responsible for providing medical care to ACCF inmates . . . CCF and Emre Umar are liable for the heretofore described actions of its employees[.]" Id. at ¶ 62. Count Four of the Amended Complaint Plaintiff alleges that Defendants CMC, Umar, and the Albany Defendants violated his constitutional rights due to their "implementation of policies that directly violate constitutional rights/failure to implement policies and practices to avoid violations of constitutional rights and failure to train/supervise employees and agents."

### a. Deliberate Indifference

The Court will first examine whether Plaintiff has alleged a violation of his constitutional rights in relation to his medical treatment. The Amended Complaint alleges that Defendants Nurse Darra Hotopp, Dr. S. Azaz Haider-Shah, and the John and Jane Doe Nurses violated Plaintiff's constitutional rights in the way that they

5

provided him medical care. Under that standard, prisoners are not entitled to "'unqualified access to health care[.]" Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Still, a prisoner "can nevertheless prevail on an Eighth Amendment claim arising out of medical care by showing that a prison official acted with 'deliberate indifference' to the inmate's serious medical needs." Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). "An official acts with deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The inquiry has two parts, "incorpora[ting] both objective and subjective elements." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." Id. As to the first element, courts draw a distinction between medical malpractice and a deprivation severe enough to implicate the Constitution. Id. Where there exists "no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," courts employ a number of factors. Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). These factors include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition sufficiently affects daily activities, and (3) 'the existence of substantial pain.'"

6

Id. (quoting Chance, 143 F.3d at 702.  Courts may also consider the potential consequences of failing to provide treatment.  Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000).

As to "deliberate indifference," a "plaintiff must prove that 'the prison official knew of and disregarded the plaintiff's serious medical needs.'"  Id. (quoting Chance, 143 F.3d at 703.  A plaintiff must demonstrate "actual knowledge of a risk," but "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it."  Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).  "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness[.]"  Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011).  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  Chance, 143 F.3d at 703.  A culpable state of mind "will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"  Harrison, 219 F.3d at 137 (quoting Farmer, 511 U.S. at 837).

Plaintiff alleges that he was beaten by several guards, and that:

32. As a result of the beatings, Mr. Haggray suffered serious injuries including bruises and swelling on his face, cheek, forehead, and body, a cut ear, abrasions on his forehead, pain in his back, knee, ankle, and body, swelling and knots in his ankle, a broken partial denture, and hearing loss in his left ear.  He also suffered from dizziness, headaches, and pain when breathing, he was unable to fully open his mouth due to jaw pain, and he coughed up blood for more than a week after.
33. Despite the vicious beating he had just endured and his visible and serious injuries, Mr. Haggray received only a dismissive, cursory medical exam from Defendant Nurse Darra Hotopp before being put into solitary confinement (SHU).

7

34. Upon entering SHU, Mr. Haggray was supposed to receive a medial exam by Defendant John/Jane Doe 5, the SHU nurse on duty that evening, but that exam consisted essentially of Defendant John/Jane Doe 5 taking his vitals and telling him to fill out a sick slip about his medical problems.
35. The next morning Mr. Haggray was still in serious pain, he began coughing up blood, and he was sensitive to light and so dizzy that he passed out in his cell.  He woke up to a CO calling out his name. Defendant Nurse John/Jane Doe 6 came and took Mr. Haggray's vitals and his sick slip, gave him a container to spit into, and left.
36. From the time he entered SHU on the evening of February 1 until he transferred to a State facility on February 11, Mr. Haggray repeatedly complained to Defendants John/Jane Doe 5-8 on SHU rounds, to the medication administration nurses, and to the facility physician, believed to be Defendant Azaz Haider-Shah, about his injuries, he showed them the containers with his coughed-up blood, and he requested medical treatment.  He also filed several sick slips requesting medical treatment and complaining of pain, dizziness, headaches, breathing difficulties, hearing loss, inability to fully open his mouth, a broken partial denture, and coughing up of blood.
37. Aside from receiving some Motrin a few days after he was injured, however, his complaints were largely ignored by the medical Defendants, and he was left coughing up blood, dizzy, in serious pain and with untreated injuries, including a broken partial denture which left him with missing teeth and prevented him from eating normally, and back pain and hearing difficulties that persisted for more than two years after the assault.

Amend. Complt. at ¶¶ 32-37.   Defendants contend that these allegations are insufficient to state a deliberate indifference claim and lack sufficient specificity to make the claims plausible.

As to whether Plaintiff suffered from a serious medical need, Defendants do not discuss the factors recited above, but simply claim that "plaintiff's complaints were insufficient in severity or duration to meet this standard."  Plaintiff responds that he has alleged substantial pain that continued for a substantial period of time.  Injuries to his teeth and jaw prevented him from eating normally, he had persistent back pain, and suffered hearing loss that lingered for two years.  The Court finds that Plaintiff has

sufficiently alleged a serious medical need. See Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). A reasonable doctor or patient would find that a person coughing up blood, suffering from hearing loss, unable to chew and eat normally, experiencing headaches, and suffering from various other aches, pains, abrasions, and bruises would find that the person had a medical need "important and worthy of comment." Brock, 315 F.3d 162. A loss of hearing and an inability to chew and eat properly serious "affects daily activities." Id. The allegations recited above also describe "substantial pain." Id. The potential consequences of failing to provide treatment, particularly for a patient coughing up blood, could also be severe. Harrison, 219 F.3d at 137. Plaintiff has sufficiently alleged a serious medical need, and the motion will be denied in that respect.

Defendants also contend that Plaintiff's allegations that they acted with deliberate indifference are insufficient. Plaintiff admits, Defendants contend, that Plaintiff was examined, given medications, and monitored by the Defendants. These actions, Defendants claim, preclude any finding of deliberate indifference. Plaintiff responds that he has alleged that the medical Defendants failed to provide him with any substantial care, despite the serious symptoms he displayed and complained of. Even when he showed his symptoms–including evidence that he was spitting up blood, to Defendant Dr. Haider-Shah–Dr. Haider-Shah simply gave him Motrin. Plaintiff describes this conduct as an "essentially wholesale dismissal and conscious disregard of his serious and legitimate medical needs" as well as an "apparent unwillingness to take the steps necessary to ensure that he received even a modicum of adequate care."

9

The Court reads Plaintiff's allegations to be that he suffered from a number of obvious and severe medical conditions as a result of the alleged beating he received from guards. Rather than provide him with any adequate treatment, such as making an investigation of the causes of the serious conditions from which he was suffering, the medical defendants ignored his complaints and provided him with virtually no care. Such allegations are sufficient to state a claim that the medical defendants 'k[new] that [Plaintiff] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it.'" Harrison, 219 F.3d at 137. Plaintiff has plausibly alleged that Defendants acted with deliberate indifference.

Plaintiff has therefore plausibly alleged that Defendants acted with deliberate indifference to his serious medical needs. The Court will deny the motion in this respect.

### b. Defendant Emre Umar

Defendants argue that the Plaintiff has failed to plead any facts giving rise to a constitutional claim against Defendant Emre Umar. The Amended Complaint, Defendants insist, does not allege any conduct by Umar that caused Plaintiff's injuries.

As to Defendant Umar, the Amended Complaint alleges that he "was and remains President of Correctional Medical Care, Inc[.]" Amended Complaint, dkt. # 56, at ¶ 14. Plaintiff also alleges that "Defendants CMC, Umar, and the County of Albany were or should have been aware of the deficiencies in medical care provided by CMC and of the risk of its continued provision of medical services to ACCF inmates." Id. at ¶ 48. Even though they were aware of these deficiencies, Plaintiff contends that "none of

10

these Defendants required or requested additional oversight, supervision, or training, no meaningful steps were taken to ensure existing policies were being followed, and no other action was taken to ensure that employees provided adequate medical care or to prevent future violations of inmates' rights." Id. at ¶ 49. Umare is named as a Defendant in two of Plaintiff's causes of action, which the Court will address in turn.

In Count Three, Plaintiff alleges that Defendant Umar violated his constitutional rights by failing to provide him treatment and acting with deliberate indifference to his serious medical needs. Plaintiff alleges that Umar, among other defendants "failed to adequately examine or treat his injuries, including his pain, dizziness, headaches, bruises and swelling, painful breathing, coughing up blood, broken partial denture, and hearing loss." Id. at ¶ 61. These allegations are only general, however, and do not name any specific defendants who were in charge of providing the particular care. Earlier in the Amended Complaint, however, Plaintiff alleges that, after he suffered a vicious series of beatings from guards which resulted in serious injuries, he received only a cursory examination from the nurse on duty, Defendant Darra Hotopp, and indifferent care from unnamed nurses in solitary confinement. Id. at ¶¶ 32-35. He continued to complain of his injuries, but received only Motrin from Defendant Dr. Azaz Haider-Shah and other medical professionals on duty. Id. at ¶¶ 36-37. Plaintiff's only description of Defendant Umar's role in this care comes in his allegation that CMC and Umar are "liable for the heretofore described actions of its employees[.]" Id. at ¶ 62.

The Court must grant this portion of the motion with respect to Defendant Umar. Plaintiff brings this claim against Umar pursuant to Section 1983, alleging that Defendant violated his constitutional rights. He does not allege, however, any

11

individual, direct care that Umar provided him which caused a deprivation of his rights. Instead, Plaintiff seeks to hold Umar liable on this Count for the conduct of his subordinates. Courts are clear, however, that "a supervisor cannot be held liable under a theory of *respondeat superior* for the constitutional torts of this subordinates; he must be personally involved in a constitutional violation in order to generate liability under § 1983." Raspardo v. Carlone, 770 F.3d 97, 122 (2d Cir. 2014). In this context "'personal involvement' include[s] 'direct participation in the alleged violation[,] . . . gross negligence in the supervision of subordinates who committed wrongful acts[,] and failure to take action upon receiving information that constitutional violations are occurring.'" Id. (quoting Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004)).

On this Count, Plaintiff simply alleges that Defendant Umar supervised persons who violated his constitutional rights. He does not contend any direct participation in those acts, nor does he allege that Umar was grossly negligence in supervising the employees who allegedly committed the violation. Plaintiff also fails to allege that Umar knew the violations of which he complains were occurring and did nothing to halt them. In other words, he has alleged only *respondeat superior* liability against Umar on this claim. The Court will therefore grant the motion with respect to Defendant Umar on Count Three.

As to Count Four, the Court reads this Count to raise a different sort of Section 1983 claim against Defendant Umar, one of supervisory liability. Since *respondeat superior* liability is unavailable on constitutional claims, a plaintiff seeking to prove a

12

Section 1983 claim against a supervisor must introduce "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001)). Personal involvement can include "direct participation by the supervisor in the challenged conduct." Id. Personal involvement by a supervisor can "also be established by evidence of an official's (1) failure to take correct action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Id.

Plaintiff's Amended Complaint raises the following factual allegations concerning CMC and Enre Umar:

45. In addition, upon information and belief, the County took no adverse action against Defendants Correctional Medical Care, Inc. (CMC) or Emre Umar for its failures regarding Mr. Haggray despite CMC's well-documented history of denying clearly warranted medical care to inmates in its care.
46. According to several reports by the press and by the New York State Commission of Correction, CMC has been faulted in the deaths of at least nine inmates at facilities in the state where it provides medical care. The Commission faulted CMC for its gross negligence and incompetence, improper and inadequate medical care, and failures to implement its own policies, to make adequate records, and to have physician evaluations, and it made specific recommendations that counties inquire into CMC's fitness as a medical provider. The Commission has also made specific recommendations to Defendant Umar regarding the adequacy and quality of medical care his company provides.
47. The New York State Attorney General also investigated CMC pursuant to requests from the State Education Department and the State Medical Review Board, and found that it engaged in a host of improper practices, including failing to prove proper medical oversight, failing to employ

13

> 48. properly credentialed medical personnel, failing to provide adequate staff, improperly substituting less qualified personnel, employment of unlicensed personnel, and engaging in the prohibited practice of corporate medicine.
> 48. Defendants CMC, Umar, and the County of Albany were or should have been aware of the deficiencies in medical care provided by CMC and of the risk of its continued provision of medical services to ACCF inmates.
> 49. Despite this, however, upon information and belief none of these Defendants required or requested additional oversight, supervision, or training, no meaningful steps were taken to ensure existing policies were being followed, and no other action was taken to ensure that employees provided adequate medical care or to prevent future violations of inmates' rights. Moreover, the County recently renewed its contract with CMC.

Amended Complaint ("Amend. Complt."), dkt. # 56,. at ¶¶ 45-49.

Count Four of the Amended Complaint, raised against CMC, Umar, and Certain County Officials, alleges a constitutional violation due to those Defendants' "implementation of policies that directly violate constitutional rights/failure to implement policies and practices to avoid violations of constitutional rights and failure to train/supervise employees and agents." After making several claims about the County Defendants, Plaintiff alleges that:

> 70. In the alternative, and upon information and belief, these Defendants have instituted policies addressing these topics but through gross negligence have demonstrated deliberate indifference to inmates by failing or refusing to enforce these policies.
> 71. Upon information and belief, these Defendants have also failed to adequately hire, screen, and supervise corrections officers and medical staff, and to provide training regarding their duties as they relate to the Constitutional rights of inmates in their care.
> 72. In accordance with their policies, customs, or practices, and/or through their failures to act on information indicating violations were occurring, and/or through their negligence in supervising subordinates, the above-named Defendants caused and allowed Mr. Haggray's rights to be violated.

Amend. Complt. at ¶¶ 70-72.

The Court finds that these allegations, when making all inferences in favor of the non-moving party, are sufficient to state a claim of supervisory liability pursuant to Section 1983 that is plausible on its face.  The allegations recited above assert that Defendant Umar and CMC were made aware of policies that violated the constitutional rights of inmates through deliberate indifference to serious medical needs.  Accepting as true the claims in the Amended Complaint and drawing all reasonable inferences in the Plaintiff's favor, the Amended Complaint alleges that Umar, charged with creating and implementing such policies, did not nothing to correct them.  While the allegations here are somewhat conclusory, reading the Amended Complaint as a whole and making all inferences in the Plaintiff's favor, the Court finds that the factual allegations in paragraphs 45-49 provide a plausible factual background for the allegations in paragraphs 70-72.  Reading those allegations together, the Court finds that Plaintiff has plausibly alleged that Defendant CMC had a practice of displaying deliberate indifference to inmates' serious medical needs.  The motion will therefore be denied with respect to the claims against CMC.  As explained above  the Amended Complaint plausibly alleges that the Defendants who implemented these policies violated Plaintiff's constitutional rights.  The motion must therefore be denied with respect to this claim against Umar.

### c. CMC

Defendants further contend that, even if Plaintiff has plausibly pled deliberate indifference, Plaintiff has failed to plead liability against CMC.  Appearing to concede that CMC's role in providing medical care for the facility qualifies the company as a

state actor, CMC contends that Plaintiff has failed to plead facts making municipal liability plausible in the Amended Complaint.

Municipal liability is limited under Section 1983 by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In that case, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997).  "A government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick v. Thompson, 141 S. Ct. 1350, 1359 (2011).   Claims against CMC would thus be proved by showing that Decedent's rights were violated "pursuant to [CMC's] custom, policy, ordinance, regulation, or decision."  Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  Plaintiff must demonstrate "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Id.

Under this theory of municipal liability, "[t]he existence of an official municipal policy or custom can also be demonstrated by establishing a deliberate government policy of failing to train or supervise its officers."  Anthony v. City of New York, 339 F.3d 129, 140 (2d Cir. 2003).  Here, "[m]unicipal liability attaches only where the failure to

train amounts to deliberate indifference to the rights of persons with whom the policy come in contact.'" Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). Liability attaches only when three "requirements" are met: "[f]irst, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." Walker v. New York, 974 F.2d 293, 297 (2d Cir. 1992). No liability attaches for failing to train "for rare or unforseen events." Id. "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation." Id. Third, "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. at 298.

As with Defendant Umar, the Court finds these allegations sufficient to state a plausible claim of liability against Defendant CMC. As explained above, while the allegations in Count Four of the Amended Complaint are conclusory, reading the Amended Complaint as a whole and making all inferences in the Plaintiff's favor, the Court finds that the factual allegations in paragraphs 45-49 provide a plausible factual background for the allegations in paragraphs 70-72. Reading those allegations together, the Court finds that Plaintiff has plausibly alleged that Defendant CMC had a practice of displaying deliberate indifference to inmates' serious medical needs. The motion will therefore be denied with respect to the claims against CMC.

### d. Cross Claims

The CMC Defendants also seek dismissal of the cross-claims brought by the County Defendants. While the Albany Defendants have moved to Join the CMC

Defendant's motion to dismiss Plaintiff's Complaint, they have not responded to the CMC Defendants' motion to dismiss their cross-claims. The Court will therefore grant that motion as unopposed.

### B.  Albany Defendants' Motion to Join CMC Defendants' Motion to Dismiss

The County Defendants have moved to join the CMC Defendants' motion to dismiss Plaintiff's claims. Defendants argue that they agree with the CMC Defendants that Plaintiff has failed to allege a constitutional deprivation, and thus any claims against them in Count Four should be dismissed. The Court will grant the motion to join the CMC Defendants' motion to dismiss, and will deny the motion for the reasons stated above.[2]

### C.  Defendants Haider-Shah, Hotopp, and John and Jane Does No. 5-8

Defendants Haider-Shah, Hotopp, and John and Jane Does have informed the Court that they join in the CMC Defendants' motion. The Amended Complaint makes

---

[2] While the Court grants the motion to join in the arguments, the Court is uncertain of the wisdom of such a motion. While the Court agrees that finding that no constitutional violation occurred would vitiate any Eighth Amendment claims against the Albany Defendants, the Court is uncertain whether, technically, joining in the CMC Defendants' motion would actually cause the claims against the Albany Defendants to be dismissed. The CMC Defendants did not move to dismiss the claims against the Albany Defendants. They moved to dismiss the claims against them. The Albany Defendants are welcome to agree with the CMC Defendants that they should be dismissed from the case, but granting the CMC Defendants' motion would remove the CMC Defendants from the case and have no practical effect on the case against the Albany Defendants. Here, the CMC Defendants' brief offered no argument about why the County of Albany or the individual Albany Defendants should be dismissed from the case. This issue is immaterial, however, since the Court has decided to deny the CMC Defendants' motion. In the future, the Albany Defendants should make their own arguments or, as Dr. Haider-Shah and Nurse Hotopp did, make their own motion and inform the court of where they join in the other defendant's *arguments*.

clear that these Defendants are alleged to have participated in constitutionally deficient medical care provided the Plaintiff.  The Court has found that Plaintiff has plausibly alleged deliberate indifference to a serious medical need by his medical providers, and denied the CMC Defendants' motion in that respect.  The Court will therefore deny these Defendants' motion on the same grounds.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part, as follows:

1. The CMC Defendants' motion to dismiss the Albany Defendants' Cross Claims, dkt., # 71, is hereby **GRANTED**;

2. The CMC Defendants' motion to dismiss Plaintiff's Claims, dkt. # 71, is hereby **GRANTED** in part and **DENIED** in part, as follows:

    a. The motion is **GRANTED** with respect to the claims against Defendant Umar in Count three; and

    b. **DENIED** in all other respects;

3. The motion to dismiss of Defendants Haider-Shah, Hotopp, and John and Jane Does 5-8, dkt. # 73, is hereby **DENIED**; and

4. The Albany Defendant's motion to join the CMC Defendants' motion, dkt. # 72, is hereby **GRANTED**.

Thomas J. McAvoy
Senior, U.S. District Judge

IT IS SO ORDERED.

Dated: January 25, 2017